IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LARRAN L., <br><br>                Plaintiff, <br><br>v. <br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>                Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br>Case #4:23-cv-00038-PK <br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Larran L.'s appeal from the decision of the Social Security Administration denying his application for disability insurance benefits and supplemental security income.[1] The Court reverses the administrative ruling and remands for further proceedings.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If

---

[1] Docket No. 10, filed August 9, 2023.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

1

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II. BACKGROUND

A.     PROCEDURAL HISTORY

On December 19, 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on October 11, 2012.[8] The claims were denied initially and on reconsideration.[9] Plaintiff then requested a hearing before an ALJ,[10] which was held on December 6, 2014.[11] On February 4, 2015, the ALJ found that Plaintiff was not disabled.[12] The Appeals Council denied review on June 3, 2016.[13]

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 175–89.

[9] *Id.* at 80–83.

[10] *Id.* at 123–24.

[11] *Id.* at 31–59.

[12] *Id.* at 12–30.

[13] *Id.* at 1–6.

Plaintiff sought review in this Court and the agency voluntarily remanded the case.[14] A remand hearing was held on November 15, 2017.[15] The ALJ again issued an unfavorable decision on June 18, 2018.[16] The Appeals Council denied review on August 14, 2019.[17]

Plaintiff again brought suit in this Court, where it was again voluntarily remanded.[18] A second remand hearing was held on August 3, 2022.[19] The ALJ found Plaintiff not disabled on August 26, 2022.[20] The Appeals Council denied review on March 30, 2023,[21] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[22]

On May 12, 2023, Plaintiff filed his complaint in this case.[23] On that same date both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[24] The Acting Commissioner filed an answer and the administrative record on July 10, 2023.[25]

---

[14] *Id.* at 894–98.
[15] *Id.* at 899–917.
[16] *Id.* at 865–85.
[17] *Id.* at 856–61.
[18] *Id.* at 1156–62.
[19] *Id.* at 1095–1118.
[20] *Id.* at 1067–94.
[21] *Id.* at 1060–66.
[22] 20 C.F.R. §§ 416.1481, 422.210(a).
[23] Docket No. 1.
[24] Docket No. 5.
[25] Docket No. 9.

Plaintiff filed his Opening Brief on August 9, 2023.[26] The Acting Commissioner's Answer Brief was filed on October 10, 2023.[27] Plaintiff filed his Reply Brief on October 24, 2023.[28]

B.     MEDICAL EVIDENCE

Plaintiff sought benefits based on mental illness.[29] Plaintiff has a history of psychosis and paranoia and has self-medicated with marijuana since the age of 13.[30] Plaintiff also has physical impairments as a result of a motor vehicle accident.[31] In September 2012, Plaintiff was involuntarily admitted to the psychiatric unit after an incident with the police.[32] On October 11, 2012, Plaintiff was discharged from the psychiatric unit and was involuntarily committed for a six-month period.[33]

In April 2013, Plaintiff's claim was reviewed by state agency psychologist Joan Zone, Ph.D.[34] Dr. Zone opined that Plaintiff had moderate limitations in certain areas related to sustaining concentration and persistence, and adaptation limitations.[35] Dr. Zone opined that Plaintiff would not be capable of work that was complex or stressful,[36] and suggested that

---

[26] Docket No. 10.
[27] Docket No. 14.
[28] Docket No. 15.
[29] R. at 205.
[30] *Id.* at 260.
[31] *Id.* at 692.
[32] *Id.* at 260.
[33] *Id.* at 270.
[34] *Id.* at 60–69.
[35] *Id.* at 66–67.
[36] *Id.* at 64.

4

Plaintiff could perform unskilled work in a low stress environment.[37] On reconsideration, Dr. Charles Raps agreed with Dr. Zone's assessment.[38]

Plaintiff began treatment with Stephen A. Welsh, M.D., in August 2013. Treatment notes from Dr. Welsh indicate that Plaintiff's mental health conditions were well-controlled with medications.[39] However, those medications also resulted in significant cognitive slowing, which has resulted in Plaintiff having difficulty following instructions and staying on task.[40] Other treatment providers also noted cognitive slowing due to Plaintiff's medication regimen.[41]

On October 29, 2014, prior to the initial hearing, Dr. Welsh wrote a letter stating that Plaintiff's schizoaffective disorder was stable on his current medication regimen, but that he would have difficulty holding a job because his thinking processes and executive functioning were severely affected by his condition and medications.[42] At the initial hearing before the ALJ, Plaintiff testified that he filed for disability after his hospitalization when he realized his medications were causing cognitive difficulties.[43]

After his claim was initially denied by the ALJ, Plaintiff was evaluated by James M. Ottesen, Ph.D., in March 2015.[44] Dr. Ottesen noted that Plaintiff's condition had largely

---

[37] *Id.* at 68.
[38] *Id.* at 84–94.
[39] *Id.* at 809, 1340, 1346, 1352, 1355, 1359, 1371, 1381.
[40] *Id.* at 809, 811, 815, 828, 829, 1028, 1029, 1037, 1053, 1058, 1373, 1376, 1388, 1393.
[41] *Id.* at 690.
[42] *Id.* at 827.
[43] *Id.* at 41–42.
[44] *Id.* at 832–37.

stabilized on medications.[45] Dr. Ottesen noted that, if Plaintiff did not take his medications, his delusions and hallucinations would make him dangerous to himself and others.[46] On the other hand, if Plaintiff does take his medications, Dr. Ottesen stated that "he cannot think quickly enough, remember well enough, or perform fast enough to be a good employee."[47]

After his evaluation, Dr. Ottesen completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Form.[48] Dr. Ottesen opined that Plaintiff had extreme limitations in maintaining social functioning; maintaining concentration, persistence, or pace; and would have four or more episodes of decompensation.[49] Dr. Ottesen also opined that Plaintiff would be off-task 15% or more of an 8-hour workday in a number of areas.[50]

In September 2017, prior to the first remand hearing, Plaintiff's treating physician, Dr. Welsh, completed Treating Source Statement and a Depressive, Bipolar, and Related Disorders Treating Physician Data Sheet.[51] Dr. Welsh noted that Plaintiff had difficulty concentrating and thinking, stating that he "[h]as trouble following through on tasks and needs to have simple instructions repeated to him multiple times."[52] Dr. Welsh also indicated that Plaintiff was easily distracted.[53] Dr. Welsh noted that Plaintiff had a number of moderate or marked restrictions in

---

[45] *Id.* at 837.
[46] *Id.*
[47] *Id.*
[48] *Id.* at 839–55.
[49] *Id.* at 849.
[50] *Id.* at 854–55.
[51] *Id.* at 1020–27.
[52] *Id.* at 1022.
[53] *Id.* at 1023.

6

his ability to perform work-related functions.[54] Dr. Welsh opined that Plaintiff would be off-task 20% or more of the time, would be absent 4 or more days per month, and would be less than 50% as efficient as the average worker.[55]

At the first remand hearing, Plaintiff again testified that his medications made him slow.[56] He further stated that his medications made it difficult to understand directions and that he need to be reminded of what he needed to do.[57]

On May 31, 2019, Dr. Welsh provided another statement, explaining that despite compliance with medication, Plaintiff was beginning to display more symptoms of paranoia.[58] Dr. Welsh stated that Plaintiff was unable to obtain a driver's license and would have a very difficult time showing up to work consistently.[59] In January 2020, Dr. Welsh provided another statement indicating that Plaintiff's medications caused "mental slowing."[60] Two years later, Dr. Welsh noted that Plaintiff had a psychotic break that resulted in hospitalization.[61]

C.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

---

[54] *Id.* at 1024–26.
[55] *Id.* at 1027.
[56] *Id.* at 904.
[57] *Id.* at 907–08.
[58] *Id.* at 1338.
[59] *Id.*
[60] *Id.* at 1365.
[61] *Id.* at 1340.

activity since October 11, 2012, the alleged onset date.[62] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: schizophrenia, anxiety, affective disorder, and a spinal disorder.[63] At step three, the ALJ found that Plaintiff did not meet or equal a listed impairment.[64] At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work.[65] At step five, the ALJ found that there were jobs that exist in significant numbers that Plaintiff could perform and, therefore, he was not disabled.[66]

## III. DISCUSSION

Plaintiff argues that the ALJ erred in her evaluation of the medical opinion evidence.[67] An ALJ must review every medical opinion.[68] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[69] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[70] If the ALJ finds that the opinion is well-supported, then she must confirm that the opinion is consistent with other

---

[62] *Id.* at 1072–73.

[63] *Id.* at 1073.

[64] *Id.* at 1073–75.

[65] *Id.* at 1085.

[66] *Id.* at 1086–87.

[67] Because Plaintiff's application was filed before March 27, 2017, the Court uses the prior regulations. *See* 20 C.F.R. § 404.1527.

[68] *Id.* § 404.1527(c).

[69] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[70] *Id.*

substantial evidence in the record.[71] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[72]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[73] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[74]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[75] If the ALJ rejects the opinion completely, she must give specific, legitimate reasons for doing so.[76] "Further, the . . . decision 'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"[77] "The goal is to facilitate meaningful review."[78]

---

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[75] *Id.*

[76] *Id.*

[77] *Id.* at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

[78] *Marshall v. Astrue*, 290 F. App'x 90, 92 (10th Cir. 2008); *see also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (reversing where the ALJ's factual findings were "insufficiently specific to allow meaningful review").

A.     DR. WELSH

Dr. Welsh provided four different statements between October 2014 and January 2020. The ALJ's treatment of at least two of these statements was deficient, requiring remand. On September 25, 2017, Dr. Welsh completed a Treating Source Statement and a Depressive, Bipolar, and Related Disorders Treating Physician Data Sheet.[79] In these statements, Dr. Welsh opined that Plaintiff had a number of work-related limitations. The ALJ gave these statements "partial weight."[80] However, the ALJ does not further articulate what portions of Dr. Welsh's opinions were entitled to some weight. Without further explanation, the Court is unable to meaningfully review the ALJ's decision. For example, Dr. Welsh opined that Plaintiff had a number of marked work-related limitations, would be off task 20% or more of the time, would miss four days or more per month, and would be 50% less efficient than an average worker. If the ALJ gave weight to these particular opinions, full time work may be precluded. But the ALJ did not provide sufficient analysis to allow for review by the Court. As such, remand is required to allow for further articulation of the weight given to Dr. Welsh's statements and the reasons supporting that weight.

Next, the ALJ did not weigh Dr. Welsh's statement from 2020. In that statement, Dr. Welsh noted that Plaintiff was "distant and disconnected" and had "mental slowing" from his medications.[81] While the ALJ discussed this statement,[82] she did not weigh it under the relevant

---

[79] R. at 1018–27.
[80] *Id.* at 1080.
[81] *Id.* at 1365.
[82] *Id.* at 1080.

factors. Therefore, this case must be remanded for the ALJ to weigh this statement in the first instance.

Plaintiff also argues that the ALJ's treatment of Dr. Welsh's other statements was deficient. However, since remand is required and the ALJ's evaluation of those statements may change, the Court need not reach Plaintiff's arguments as to those statements.[83]

B.  DR. OTTESEN

As noted, Dr. Ottesen conducted a psychological evaluation[84] and completed a Psychiatric Review Technique.[85] The ALJ gave "no weight" to the opinions contained in Dr. Ottesen's Psychiatric Review Technique.[86] The ALJ concluded that Dr. Ottesen's opinions were "not reflected in any way by his evaluation . . . or by the rest of the medical evidence."[87] Because this matter must be remanded, the Court will not fully address the parties' arguments as to Dr. Ottesen. However, the Court would note that Dr. Ottesen's evaluation and his ultimate opinions are not as different as the ALJ suggests. For instance, in his evaluation, Dr. Ottesen noted that Plaintiff's responsiveness was "quite slow," "which would be expected for someone taking the strong psychopharmacological medications [Plaintiff] is taking."[88] Dr. Ottesen then accounted for Plaintiff's cognitive difficulties by opining that Plaintiff would have limitations in certain

---

[83] *Watkins*, 350 F.3d at 1299 (stating that the court "will not reach the remaining issues raised by [Plaintiff] because they may be affected by the ALJ's treatment of this case on remand").
[84] R. at 832–37.
[85] *Id.* at 839–55.
[86] *Id.* at 1079.
[87] *Id.*
[88] *Id.* at 835.

areas, like his ability to maintain, concentrate, or persist.[89] While there may be good reasons to discount Dr. Ottesen's opinions, the ALJ's statement that his "opinion[s] look nothing like the evaluation,"[90] is not accurate. Therefore, the ALJ should reevaluate Dr. Ottesen's opinions on remand.

C.  STATE AGENCY PSYCHOLOGICAL CONSULTANTS

The ALJ gave "significant weight" to the opinions of state agency psychological consultants, Drs. Joan Zone and Charles Raps. Typically, the opinion of a treating physician is "given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant."[91] "[T]he opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."[92] Guidance from the Social Security Administration explains those unique circumstances where a state agency physician's opinions may be entitled to greater weight than those of a treating physician.[93] SSR 96-6p states that,

> the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.[94]

---

[89] *Id.* at 850–55.

[90] *Id.* at 1079.

[91] *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (internal quotation marks omitted).

[92] *Id.*

[93] SSR 96-6P, 1996 WL 374180, at *3 (July 2, 1996).

[94] *Id.*

Here, the state agency psychological consultants rendered their opinions in April and August 2013, respectively. This means that they did not review nearly a decade's worth of medical records that had been produced between the time they rendered their opinions and the ALJ issued her decision, including the opinions of Drs. Welsh and Ottesen previously discussed. Further, the state agency psychological consultants did not review a report from a specialist that was more detailed and comprehensive than what was available to Dr. Welsh. As such, the ALJ's decision to give greater weight to the opinions of Drs. Zone and Raps was inconsistent with SSR 96-6p. This error is compounded by the ALJ's failure to adequately address all of Dr. Welsh's opinions. Because this case requires remand, the ALJ should reconsider the weight to be given to the outdated opinions of the state agency psychological consultants.

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court reverses and remands the Commissioner's decision.

DATED this 22nd day of November, 2023.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge